### TIBBITS v. CONVERSE.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

#### No. 48.

CORPORATIONS (§ 271*)—ACTION TO ENFORCE LIABILITY OF STOCKHOLDER—QUESTIONS FOR JURY.

In an action to charge defendant as a stockholder in an insolvent corporation, where the president and cashier of the bank in which defendant was a clerk testified that the bank owned the stock and caused it to be transferred to the name of defendant without consulting him, he himself testified that so far as he remembered he never knew of the transfer, and all testified that he did not purchase or have any interest in the stock, or have the certificates in his possession, or receive any dividends thereon, the mere fact that on two occasions he signed blank proxies to vote at annual meetings was not sufficient to justify the court in withdrawing from the jury the question as to defendant's ownership, and directing a verdict for plaintiff.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1160; Dec. Dig. § 271.*]

In Error to the Circuit Court of the United States for the District of Connecticut.

Action by Theodore R. Converse, receiver of the Minnesota Thresher Manufacturing Company, against Edward H. Tibbits. Judgment for plaintiff on a directed verdict, and defendant brings error. Reversed.

Donald G. Perkins, for plaintiff in error.

William Waldo Hyde and Charles Welles Gross, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The plaintiff was, on September 16, 1901, appointed receiver of the Minnesota Thresher Manufacturing Company, a Minnesota corporation, and is seeking to collect an assessment duly levied upon the stockholders. Finding defendant's name on the books as the owner of 612 shares of preferred stock, he sued him

for $19,584, the amount assessed against such shares, with interest. The defendant denied that he was the owner or holder of such stock. He admitted that in June, 1892, it was transferred into his name on the books of the bank, but averred that this was done without his knowledge or consent, and that the transferror had ever since held and controlled the said stock certificates, and owned and held all right, interest, and beneficial ownership therein.

A single and simple issue of fact was thus presented. The evidence showed without contradiction that prior to June, 1892, the 612 shares, represented by seven separate certificates, were held and owned by the First National Bank of Norwich, Conn.; that on May 27th the certificates were sent by its cashier to the office of the Thresher Company with a request to have them transferred and new certificates issued in the name of Edward H. Tibbits, and the new certificates returned to the bank. This was done. The president of the bank testified that the certificates, when received, were placed in the custody of the cashier, and thereafter remained in the possession of the bank; that Tibbits had no beneficial interest whatever in them, did not pay anything to the bank for them, and that, so far as the witness knew, Tibbits never saw the certificates, nor was he consulted, nor his permission asked, nor anything said to him about causing those certificates to be put in his name. The cashier testified to the same effect. No one testified that Tibbits was informed of the transfer to himself prior to the time when assessment was called for. He was a clerk in the employ of the bank. The only other witness who testified to this issue was defendant himself. His testimony is not very satisfactory. Evidently it did not impress the trial judge. Nevertheless he stated positively that he never received the certificates, nor had them at any time in his possession, and asserted more than once that he did not think he ever heard of the transfer, and could not remember that he knew anything about such transfer prior to the attempt to collect the assessment.

On this state of the proof it was manifestly for the jury to decide the question whether or not he knew the stock stood in his name. The trial judge, however, withdrew that question from them, because two blank printed forms of proxy to vote at annual meetings, dated, respectively, October 18, 1898, and October 24, 1900, had been signed by Tibbits, holding that the signing of these proxies "put him in a position where it would be impossible for him to put up the plea of ignorance." It was not contended that these signed proxies constituted an estoppel. They are very different documents from the dividend checks which the defendant signed in Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, 33 L. Ed. 531. They are relied upon as proof that at the time he signed them defendant must have known that stock of the Thresher Company was standing in his name.

Tibbits admitted the genuineness of the signatures, but asserted that he had no recollection of signing them, and could not remember that at the time he knew of the stock standing in his name; that he might have signed them, without knowing what he was signing; that a great many times clerks are asked to sign papers they known very little about, and sign proxies without paying any particular attention to

175 F.—36

them. We do not find anything inherently impossible in the proposition that bank clerks are sometimes so careless, negligent, and unbusinesslike as to sign some blank, printed form which their superiors may ask them to sign, without concerning themselves as to its contents. The circumstance of Tibbits signing these two proxies was one to be considered by the jury—giving due effect to it—when weighing his testimony; but it was not sufficient to justify the withdrawal of the issue of fact entirely from their consideration. Whatever might have been their verdict on all the evidence—whether for plaintiff or defendant—there would be found sufficient in the record to support it, and it would have been error to set such verdict aside.

The exception to a direction of the verdict is sound, and the judgment is reversed, and cause remanded for a new trial.